UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOAM EISEN, et al.,<br><br>          Plaintiffs,<br><br>    v.<br><br>EMILY DAY,<br><br>          Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 21-cv-05349-VKD<br><br>**ORDER DENYING MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 67 |

Plaintiffs Noam Eisen and The Cosmo Alleycats, a general partnership, move for leave to file a first amended complaint ("FAC") in this action. Dkt. No. 67. Plaintiffs' proposed amended complaint names five new defendants and adds allegations regarding the new defendants' liability for claims presently asserted only against defendant Emily Day and unnamed Doe defendants. *Id.*, Ex. A. Defendant Ms. Day and counter-plaintiff Cosmo Alleycats, LLC oppose the motion. Dkt. No. 70.[1] The Court held a hearing on the motion on January 24, 2023. Dkt. No. 74.

For the reasons discussed below, the Court denies plaintiffs' motion for leave to amend the complaint.

I.    **BACKGROUND**

This litigation involves a dispute between the members of a band called "The Cosmo Alleycats." Plaintiffs filed the action on March 26, 2021 in San Francisco County Superior Court, asserting claims against Ms. Day and unnamed Doe defendants for (1) breach of oral contract, (2)

---

[1] All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 5, 6.

breach of implied contract, (3) breach of fiduciary duty, (4) interference with contracts, (5) interference with prospective economic relations, (6) conversion, (7) unfair competition under California Business & Professions Code § 17200, (8) accounting, (9) defamation, and (10) injunctive relief/declaratory judgment. Dkt. No. 1, Ex. A. Plaintiffs describe the unnamed Doe defendants as the "agents, servants, employees, employers, principals, owners, co-owners, lessors, sublessors, predecessors, or successors of their codefendants." *Id.* ¶ 14(c).

On June 24, 2021, Ms. Day and Cosmo Alleycats, LLC (collectively, the "Day parties") filed a counterclaim against Mr. Eisen for (1) copyright infringement under 17 U.S.C. § 106, (2) false designation of origin/false description under the Lanham Act, 15 U.S.C. § 1125(a), (3) infringement of statutory right of publicity under California Civil Code § 3344, (4) infringement of common law right of publicity, (5) breach of fiduciary duty, (6) defamation, (7) interference with prospective economic advantage; and (8) unfair competition under California Business & Professions Code § 17200. *Id.*, Ex. E. As alleged in the counterclaim, "Cosmo Alleycats, LLC was formed in December 2020 and is the successor-in-interest to the prior Cosmo Alleycats entity, which operated as a general partnership." *Id.* ¶ 8. The Day parties removed the action to federal court on July 13, 2021, citing federal question jurisdiction. *See* Dkt. No. 1 at 2.

The period for fact discovery closed on July 22, 2022, with the exception of the depositions of six individuals, including band members Pete Cornell, Mike Burns, Andrew Storar, and Steve Height. Dkt. Nos. 29, 54. The parties completed these depositions during the first two weeks of October 2022. Dkt. No. 67-1 ¶ 2. Plaintiffs say they learned several pieces of new information during the individual band members' depositions, and that this new information reveals that Messrs. Cornell, Burns, Storar, and Height, as well as the Cosmo Alleycats, LLC, are liable as defendants for several of the claims plaintiffs originally asserted only against Ms. Day and unnamed Doe defendants. Dkt. No. 67 at 3-5. Plaintiffs seek leave to amend the complaint to add new allegations and new defendants.

## II.   LEGAL STANDARD

Rule 15(a) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to grant leave to amend is

committed to the sound discretion of the trial court. *Waits v. Weller*, 653 F.2d 1288, 1290 (9th Cir. 1981). When considering whether to grant leave to amend, a court should consider several factors including undue delay, the movant's bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[P]rejudice to the opposing party . . . carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (per curiam). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id*.

## III.   DISCUSSION

The parties dispute whether plaintiffs unduly delayed in seeking amendment, whether the proposed amendments will prejudice defendants, and whether the proposed amendments are futile. In addition, the Day parties contend that the proposed amendments would require modification of the current case schedule. The Court addresses each of the relevant considerations.

### A.   Timing of Proposed Amendments

The Day parties argue that plaintiffs unduly delayed in requesting leave to amend the complaint. In particular, they challenge plaintiffs' assertions that the proposed amendments are based on newly discovered evidence and/or a new defense legal theory. The Court agrees that plaintiffs identify no new facts and no new defense legal theory that justify raising the proposed amendments at this late stage of the case.

#### 1.   Facebook post

Plaintiffs say that they recently learned that Mr. Height, and not Ms. Day, wrote the allegedly defamatory February 9, 2021 Facebook post and that each of the other band members supported and agreed to the post. Dkt. No. 67 at 3-4; Dkt. No. 67-1 ¶¶ 3-6. Based on this information, plaintiffs contend that the proposed individual defendants, as well as Ms. Day, are liable for defamation (claim 9). Dkt. No. 67 at 4. The Day parties respond that these facts are not new. They note that the Facebook post was signed by Ms. Day and the four other band members, Messrs. Storar, Burns, Height and Cornell (using their first names), and is written using plural

3

possessive pronouns and collective nouns (i.e. "our," "us," "the band," "we"), reflecting the views not of Ms. Day alone, but of all signatories. Dkt. No. 70 at 8; Dkt. No. 70-1, Ex. J. Moreover, shortly after the post was made, Ms. Day commented on it, stating: "Hi Noam. This is Steve's post, not mine."[2] Dkt. No. 70 at 8; Dkt. No. 70-1, Ex. K. In reply, plaintiffs argue that Mr. Eisen simply did not believe anyone else was responsible for the Facebook post until plaintiffs took Mr. Height's deposition and he confirmed that he wrote the post and all other band members agreed with it. *See* Dkt. No. 67 at 3-4; Dkt. No. 71 at 7-8.

Mr. Eisen's beliefs notwithstanding, the operative facts have not changed since February of 2021. On its face, the allegedly defamatory post was endorsed by all band members, the identities of all band members were known to plaintiffs, and no contrary evidence was obtained during the course of discovery. Plaintiffs cite no authority suggesting that Mr. Eisen's earlier disbelief of the representations made by Ms. Day and the other band members justifies plaintiffs' delay in asserting claims against the individual band members until such time as Mr. Eisen developed a firm conviction that the facts were indeed as represented.

### 2. Mr. Eisen's ouster

Plaintiffs say they also recently learned that the individual band members were "part of a consensus to oust Mr. Eisen from the partnership in early November 2020 and discussed and agreed to varied degrees to support blocking him from accessing the business assets from that point forward." *Id.*; Dkt. No. 67-1 ¶¶ 7-8. Plaintiffs argue that this new information makes each of the proposed individual defendants liable for interference with contracts, interference with prospective economic relations, and conversion (claims 4-6). Dkt. No. 67 at 4. The Day parties respond that all band members have consistently maintained that they acted together, as a partnership, to oust Mr. Eisen from the band in November 2020 and to prevent him from taking any further actions on behalf of the band. Dkt. No. 70 at 5-7. The Day parties' assertions are supported by contemporaneous email exchanges between Mr. Eisen, Ms. Day, and other band members in November 2020. *See* Dkt. No. 70-1, Exs. G and H. Moreover, the Day parties' June

---

[2] All parties agree that "Steve" refers to Mr. Height.

24, 2021 counterclaim expressly states that "[a]ll members of the Partnership[3] (other than Eisen) agreed unanimously that Eisen should be dissociated from the Partnership, and they notified Eisen of that decision by email dated November 11, 2020."  Dkt. No. 1, Ex. E ¶ 30.  In reply, plaintiffs again argue that Mr. Eisen did not believe that the partnership included members other than himself and Ms. Day, and he did not believe anyone but Ms. Day was responsible for his ouster from the band or any subsequent actions.  *See* Dkt. No. 67 at 4; Dkt. No. 71 at 7-8.

While the facts, and their legal significance may be disputed, plaintiffs do not dispute that they were fully aware of the contemporaneous email communications and of the Day parties' allegations concerning these matters as stated in the counterclaim.  The underlying facts and the Day parties' positions are not new or newly discovered, but were known to plaintiffs as of June 2021 at the latest.

### 3. Organizational structure of the band

Plaintiffs say they learned in depositions that the individual band members will testify that each of them participated in a meeting in 2013 during which they agreed that Mr. Eisen and Ms. Day would act as managers of the band's business.  Dkt. No. 67-1 ¶¶ 9-10; Dkt. No. 71 at 5. Plaintiffs dispute that all band members were members of a general partnership, but they wish to amend their complaint to claim, in the alternative, that if Messrs. Cornell, Burns, Storar, and Height are indeed members of the general partnership, then they are individually liable for claims concerning obligations owed to plaintiff Cosmo Alleycats general partnership (claims 1-3, 6-8, 10).  Dkt. No. 67 at 4-5.  In response, the Day parties again emphasize that the individual band members' positions regarding the nature and existence of the partnership have long been known to plaintiffs.  Contemporaneous email communications reflect that Ms. Day and the other band members took the position that the band operated as a partnership comprised of all band members, not just Mr. Eisen and Ms. Day, and disputed Mr. Eisen's contrary view.  For example, on November 9, 2020 Ms. Day wrote, "this band does not recognize the title of 'Principal Owner' as an available role for anyone to assume, and changing your email signature to reflect that, does not

---

[3] Elsewhere in the counterclaim, the Day parties make clear that the partnership was comprised of all members of the band.  Dkt. No. 1, Ex. E ¶ 8.

change anything in our minds as to how this business operates." Dkt. No. 70-1, Ex. G. Later the same day, Mr. Height wrote, "[m]y consent to have you (or Emily for that matter) become a 'principal owner' or 'owner' in any capacity whatsoever was never granted to either of you, as that fundamentally goes against the ethos of the band and how it has always operated." *Id.* On November 10, 2020, Mr. Burns wrote, "The Cosmo Alleycats has always functioned as a collective," and "[y]our desire to be considered a leader of the band or to try, by hook or crook, to claim ownership of the band is unfortunate and runs contrary to the founding principles of this band." *Id.* Moreover, the counterclaim alleges not only that all band members were members of the partnership, but that they agreed on "practices as to how they would operate the Partnership and governing such issues as admission and dissociation of partners." Dkt. No. 1, Ex. E ¶ 15; *see also id.* ¶¶ 16-20. With respect to management of the band by Mr. Eisen and Ms. Day, the counterclaim specifically alleges:

> In or around 2013 or 2014, the Band members agreed that Eisen and Day would take on a greater role in the management of the Band. Among other things, Eisen and Day took primary responsibility for negotiating and administering client contracts. They each also handled the funds generated through those contracts through their separate sole proprietorships, Noam Eisen Music and Emily Day Music. The Band members agreed that Eisen and Day would receive compensation (in addition to their share of Partnership profits) for performing these duties. However, there was no change in any person's ownership interest in the Partnership; nor was a new partnership formed.

*Id.* ¶ 21.

Plaintiffs acknowledge the existence of these email communications and the allegations in the Day parties' counterclaim. However, they insist that they only recently learned that the Day parties intend to argue that the band members' decision to have Mr. Eisen and Ms. Day manage the band's business is itself evidence of the existence of a partnership comprised of all band members. Dkt. No. 67 at 4; Dkt. No. 71 at 5. This is not new "evidence" or a "new legal theory" of defense against liability. Rather, it appears that plaintiffs may not have appreciated until recently the possible legal significance of certain disputed facts that were already part of the record.

### 4. Cosmo Alleycats LLC

Finally, plaintiffs say that "discovery has revealed" that counter-plaintiff Cosmo Alleycats, LLC has "assumed the assets of the partnership at no cost, has amassed hundreds of thousands of dollars in client contracts and revenue as a result of the exploitation of those assets, and that the Defendants' legal expenses from this case are being used as expenses of the LLC." Dkt. No. 67 at 5. Based on this information, plaintiffs seek to amend their complaint to assert a claim for accounting (claim 8) against Cosmo Alleycats LLC.[4] *Id.* The Day parties respond that the LLC entity has been a party to this action since June of 2021 and that plaintiffs have known about its existence and operation since before the lawsuit was filed. Dkt. No. 70 at 9. Indeed, the counterclaim alleges that the LLC was "formed in December 2020 and is the successor-in-interest to the prior Cosmo Alleycats entity, which operated as a general partnership," and that Ms. Day is one of five managers of the LLC. Dkt. No. 1, Ex. E ¶ 8.

While the counterclaim does not detail the LLC's operations, it is difficult to credit plaintiffs' argument that information about those operations was unknowable until individual band members testified in deposition. Indeed, in their complaint against Ms. Day and the Doe defendants, plaintiffs themselves allege that "Defendant Day has misappropriated monies owed and payable to him by converting and using those funds to benefit her and her newly registered limited liability company." *Id.*, Ex. A ¶ 122. Plaintiffs had over 12 months of discovery to obtain documents and interrogatory responses regarding this allegation and the LLC's operations, and they do not suggest that the Day parties withheld this information from them. Given these circumstances, the Court is not persuaded that new evidence has only recently been discovered such that plaintiffs only now have a factual basis to assert claim 8 against the LLC.

In sum, the Court finds that plaintiffs unreasonably delayed in seeking leave to amend their complaint after the close of fact discovery. However, because "delay alone no matter how lengthy

---

[4] There is a discrepancy between plaintiffs' motion and the proposed amended complaint. Plaintiffs' motion argues that they should be permitted to assert an accounting claim (claim 8) against Cosmo Alleycats, LLC. Dkt. No. 67 at 5. However, the proposed amended complaint states that claims 6-8 and 10 are asserted "against all defendants." *Id.*, Ex. A.

is an insufficient ground for denial of leave to amend," *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981), the Court considers the remaining factors that bear on amendment.

### B. Prejudice to the Day Parties and New Defendants

The Day parties argue that plaintiffs' proposed amendments "would have the effect of prejudicing the new parties, as well as [Ms. Day] and the Court itself." Dkt. No. 70 at 11. Specifically, the Day parties argue that the new defendants would require an opportunity to file motions to dismiss the amended complaint under Rule 12(b)(6) as to claims that, they say, are time-barred or as to which no claim for relief may be stated. *Id.* at 12. Moreover, the Day parties anticipate that the new defendants may wish to assert their own counterclaims against Mr. Eisen, which may also lead to further motion practice. *Id.* In addition, counsel for the Day parties represents that the new individual defendants may need to retain separate counsel, and in any event, they likely will seek to reopen discovery for the purposes of developing evidence regarding the claims asserted against them prior to filing their own dispositive motions. *Id.*; Dkt. No. 74 (discussion at hearing).

Plaintiffs downplay the impact of the proposed amendments on the new defendants. They note that the LLC is already a party to the case and dispute that the LLC will suffer any prejudice if the amendments against it are allowed. Dkt. No. 70 at 4. As for the individual defendants, plaintiffs argue that each of them has been "embroiled in all aspects of this case from the onset," including providing documents and deposition testimony, and attending the settlement conference, and therefore will not be prejudiced by the amendments. Dkt. No. 67 at 8.

With respect to the individual defendants, the Court agrees with the Day parties that they will be prejudiced by the proposed amendments. Participating in litigation as a non-party witness, even a non-party witness with an interest in the outcome of the matter, is very different from being named as defendant with potential liability and exposure to damages. As non-party witnesses, these individual defendants had no control over the legal strategy the Day parties pursued in defense against plaintiffs' claims or development of the evidence in support of that defense. At a minimum, each individual defendant would be entitled to challenge the sufficiency of the claims asserted against him and to take discovery in support of his own defense. This is a substantial

additional burden that the individual band members would undertake if named as defendants. *Acri v. Int'l Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398–99 (9th Cir. 1986) (district court properly considered whether allowing amendment would require a party to engage in further discovery in evaluating prejudice).

The prejudice is less clear with respect to Cosmo Alleycats, LLC. As plaintiffs correctly observe the LLC asserted its own counterclaims against Mr. Eisen and has been a party since June 2021. However, the claim plaintiffs propose to assert against the LLC is independent of the claims the LLC asserts against Mr. Eisen, and it appears that the LLC, like the individual defendants, also would require an opportunity to challenge the amendment in a motion to dismiss and to take discovery if the Court permitted the amendment. Accordingly, the LLC likely will suffer some prejudice if the Court grants leave to amend with respect to the LLC and claim 8.

### C. Impact of Amendment on the Case Schedule

The Day parties argue that permitting the proposed amendments would require the Court to modify the current case schedule. Plaintiffs appear to suggest that the current schedule can accommodate the additional effort that may need to be undertaken by the Court and the parties if the Court allows the proposed amendments.

According to the current schedule, fact discovery is closed, expert discovery must be completed by January 31, 2023, and dispositive motions will be heard no later than March 28, 2023 (which means the motions must be filed by February 21, 2023). Dkt. No. 69. The final pretrial conference is set for July 26, 2023, and the bench trial will begin August 21, 2023. *Id.* The Court agrees with the Day parties that allowing plaintiffs to amend will require the Court to modify the existing schedule.

Under Rule 16, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). "A court's evaluation of good cause [under Rule 16(b)(4)] is not coextensive with an inquiry into the propriety of the amendment under [Rule 15(a)]." *Peoples v. Cnty. of Contra Costa*, No. C 07-00051 MHP, 2008 WL 2225669, at *2 (N.D. Cal. May 28, 2008) (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 608 (9th Cir.1992)). "Although the existence or degree of prejudice to the party opposing the modification might

supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification." *Peoples*, No. C 07-00051 MHP, 2008 WL 2225669, at *2. "Rule 16(b)'s 'good cause' standard primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609.

As discussed above, plaintiffs' delay in seeking amendment is not reasonable. While the Court appreciates that plaintiffs had difficulty obtaining deposition testimony due to circumstances beyond their control, they identify no new facts in support of the proposed amendments, and they do not adequately explain why the information they now believe warrants amendment could not have been obtained earlier in discovery using other available discovery tools. Accordingly, plaintiffs' have not demonstrated the good cause (or diligence) that modification of the scheduling order requires. *See also Acri*, 781 F.2d at 1398 ("[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").

### D. Futility of Amendment

The Day parties also argue that at least some of the proposed amendments would be futile. *See* Dkt. No. 70 at 12-13. Plaintiffs disagree. Dkt. No. 67 at 9-10. "A proposed amendment is futile only if it would be immediately subject to dismissal." *Johnson v. Serenity Transportation, Inc.*, No. 15-CV-02004-JSC, 2015 WL 4913266, at *3 (N.D. Cal. Aug. 17, 2015) (citing *Nordyke v. King,* 644 F.3d 776, 788 n.12 (9th Cir.2011)). "Thus, the proper test to be applied when determining the legal sufficiency of a proposed amendment is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)." *Id.*

This portion of the parties' briefing is not well-developed. Indeed, the Day parties say that they "intend to fully brief this issue in the event that the Court allows Mr. Eisen to name new parties in this case." Dkt. No. 70 at 13. On the record presented, it is difficult for the Court to assess whether any of the proposed amendments would be futile. For this reason, the Court considers this factor to be neutral.

### E. Other Considerations

#### 1. Prior unsuccessful efforts to amend

Plaintiff has not previously attempted to amend the complaint. This consideration is most relevant where a plaintiff has repeatedly tried and failed to state a claim for relief, and is facing dismissal. That is not the case here.

#### 2. Dilatory motive or bad faith

The Court may consider whether a motion for leave to amend reflects bad faith or dilatory motive. *Foman*, 371 U.S. at 182. Here, the Court finds no basis to conclude that plaintiffs have acted in bad faith or with a motive to delay the action.

## IV. CONCLUSION

Given plaintiffs' unreasonable delay in seeking leave to amend the complaint, the resulting prejudice to the Day parties and the new proposed defendants, and the impact the proposed amendments would have on the Court's schedule, the Court denies plaintiffs' motion for leave to amend.

**IT IS SO ORDERED.**

Dated: January 27, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge