UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| NOAM EISEN, et al.,<br><br>        Plaintiffs,<br><br>   v.<br><br>EMILY DAY,<br><br>        Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 21-cv-05349-VKD<br><br>**ORDER ON MOTIONS IN LIMINE**<br>Re: Dkt. Nos. 120-126 |

The Court held a pretrial conference in this matter on March 20, 2024. Dkt. No. 141. This order resolves the parties' motions in limine. *See* Dkt. Nos. 120-126.

**I.    EISEN MOTIONS IN LIMINE**

    **A.    Motion in Limine No. 1 – Supplemental Rule 26(a)(1)(A)(iii) Disclosure**

On March 4, 2024, the Day parties served a supplemental Rule 26(a)(1)(A)(iii) disclosure describing their damages computations. *See* Dkt. No. 120-1, Ex. A. The Eisen parties object to this disclosure, claiming that it "include[s] multiple new categories [of damages] not otherwise disclosed" on which they were unable to complete discovery. Dkt. No. 120 at 4. They ask the Court to "exclude any such untimely disclosed information related to Defendant's newly alleged computation of damages and any claim to damages that flow therefrom." *Id.* at 1. The Day parties respond that their supplemental disclosure does not contain any new theories of damages, but "merely summarized and aggregated in a single place the specific damages theories and calculations that had been previously disclosed to Eisen during discovery." Dkt. No. 134 at 2.

The motion is granted in part and denied in part.

1 Rule 26(a)(1)(A)(iii) requires parties to exchange "a computation of each category of
2 damages claimed" as part of their initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii). While the
3 rule "does not require damages to be calculated with precision," it does require parties to "describe
4 on a claim-by-claim basis the nature of the damages claimed (e.g. actual damages), and how such
5 damages may be calculated (e.g. estimated value of specific lost business opportunities)." *Song v.*
6 *Drenberg*, No. 18-cv-06283-LHK (VKD), 2019 WL 1949785, at *2 (N.D. Cal. May 2, 2019).
7 The level of specificity required varies depending on the stage of the litigation and the claims at
8 issue. While a precise damages computation may not be possible at the outset of a litigation, *see*
9 *City & Cnty. of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 222 (N.D. Cal. 2003), Rule
10 26(e) requires parties to supplement their disclosures when "the party learns that in some material
11 respect the disclosure or response is incomplete or incorrect, and if the additional or corrective
12 information has not otherwise been made known to the other parties during the discovery process
13 or in writing." Fed. R. Civ. P 26(e)(1)(A).
14 "A party that fails to provide information . . . as required by Rule 26(a) or (e) may not use
15 that information . . . to supply evidence at trial unless the failure was 'substantially justified or is
16 harmless.'" *Soverns v. Delta Air Lines Inc.*, No. 20-CV-06258-BLF, 2023 WL 2768431, at *2
17 (N.D. Cal. Apr. 3, 2023) (quoting Fed. R. Civ. P. 37(c)(1)). The party facing sanctions under Rule
18 37(c)(1) bears the burden of proving that their discovery violations were justified or harmless.
19 *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1107 (9th Cir. 2001). In
20 determining whether a discovery violation was harmless, the court may consider "'(1) prejudice or
21 surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the
22 prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in
23 not timely disclosing the evidence.'" *Gryglak v. HSBC Bank USA, N.A.*, No. 22-15630, 2023 WL
24 3243998, at *2 (9th Cir. May 4, 2023) (quoting *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x
25 705, 713 (9th Cir. 2010)).
26 At the beginning of this litigation, the Day parties served their initial disclosures (*see* Dkt.
27 Nos. 3, 11), including the following disclosure regarding damages:
28 Counterclaimants do not yet have the information necessary to

> prepare a detailed damages computation as to most of the claims they assert. With respect to the claim for copyright infringement, Day seeks statutory damages up to $150,000 and attorneys' fees. In addition, Counterclaimants seek compensatory damages, restitution, disgorgement of profits, treble damages pursuant to the Lanham Act, punitive damages, interest, and costs. Counterclaimants will supplement this disclosure to provide a calculation of each category of recovery after obtaining the necessary information through further investigation and discovery.

Dkt. No. 134 at ECF 22 (Ex. B at 2). On December 7, 2021, Ms. Day provided the following additional information about the "reputation harm, emotional distress, . . . economic harm" she suffered as a result of Mr. Eisen's alleged defamation in response to Mr. Eisen's Interrogatory No. 22:

> At present, Day lacks information sufficient to calculate all the business lost. However[,] Eisen refused to transfer deposits upon client request to the Cosmo Alleycats, the band that the clients hired and the band that inevitably performed the contracts. Eisen owes the band members of Cosmo Alleycats $4,900 in performed contracts and $3,050 in yet to be performed contracts.

*Id*. at ECF 68 (Ex. D at 18). On June 16, 2022, defendant Cosmo Alleycats LLC provided the following additional information about its damages claims in response to Mr. Eisen's Interrogatory No. 20:

> LLC has been damaged by Eisen's diversion of clients (including but not limited to through his interference with LLC's online presence and social media account and his collection of deposits for band performances and refusal to refund such deposits to clients expecting the band – *i.e.*, the LLC members, and specifically Ms. Day – to perform). The LLC has also suffered damages in the form of its proportional interest in the value of Band equipment in the possession of Eisen.

*Id.* at ECF 44 (Ex. C. at 17). The Day parties' March 4, 2024 supplemental disclosure includes the following information regarding six categories of damages they intend to seek at trial:

> (1) lost revenue from prior, repeat customers, Wine Country Entertainment and Entire Productions, who no longer hire the Cosmo Alleycats band due to the tortious interference of Eisen ($51,000);
>
> (2) lost revenue from individual clients (Gottlieb, Bruno, Impact Destinations) Eisen diverted from the Cosmo Alleycats to his new, competing band, Radio Gatsby ($10,700);

3

>(3) customers deposits wrongfully retained by Eisen relating to contracts (Ross, Levine, Feinstein, Boland) Eisen signed on behalf of the Cosmo Alleycats for performances that were rescheduled due to the Covid-19 pandemic and which Eisen ultimately did not perform at following his removal from the band ($10,100);
>
>(4) PPP forgivable (and forgiven) loan proceeds Eisen obtained in the name of the Cosmo Alleycats but which he exclusively retained ($20,440);
>
>(5) musical and band equipment for which Day had paid half the cost ($13,320); and
>
>(6) damages Day suffered as a result of Eisen's defamatory statements about her ($50,000).

Dkt. No. 134 at 5; *id.* at ECF 22-25 (Ex. B at 2-5).

Based on the record presented, it appears that the Day parties earlier disclosed the *type* or *nature* of the damages they now list as categories 1, 2, 3, 5 and 6 (but not category 4). However, with the exception of the amounts identified in Ms. Day's answer to Interrogatory No. 22 (above), the Day parties appear to have never disclosed the *amount* claimed for any of their damages categories until March 4, 2024. Unless these damages amounts were disclosed as part of expert discovery or otherwise, the Court concludes that the Day parties' supplemental Rule 26(a)(1)(A)(iii) disclosure was not timely, and the delay was not substantially justified.

During the hearing on this motion in limine, the Eisen parties conceded that they are not prejudiced by the Day parties' late disclosure of damages categories 5 and 6. Thus, the Day parties may present evidence in support of their damages claims as to those two categories. In addition, the Court is not persuaded that the Eisen parties are prejudiced by the Day parties' belated disclosure of damages category 3, as they had notice that the Day parties claimed the deposits Mr. Eisen allegedly retained as damages. Thus, the Day parties may present evidence in support of their damages claim as to this category.

However, the Court is persuaded that the Eisen parties have been prejudiced in their defense to the Day parties' damages claims for categories 1 and 2. The Eisen parties contend that, had they known the basis for the Day parties' damages computations as to those two categories, they would have sought discovery of the customers from whom the Day parties claim they lost revenue. While the Court does not find that the Day parties acted in bad faith in making this

4

untimely disclosure, discovery is long closed and there is no realistic opportunity for the Eisen parties to take the additional discovery they say would be required to rebut these claims. Thus, the Day parties may not present evidence in support of their affirmative damages claims with respect to categories 1 and 2, unless the damages computations were disclosed during expert discovery.

Finally, the Day parties may not present evidence in support of their affirmative damages claim with respect to category 4, as neither the category nor any computation of it was disclosed to the Eisen parties at any time prior to March 4, 2024.

The parties are advised that the premise for this ruling applies equally to the Eisen parties. If, as the Day parties contend, *see* Dkt. No. 134 at 9, the Eisen parties have also failed to adequately disclose the computation of each category of damages they claim, the Court will not permit the Eisen parties from presenting evidence in support of those damages claims at trial.

In view of this order, the parties may wish to confer regarding their respective damages presentations before trial.

### B. Motion in Limine No. 2 – Band Logo

The Eisen parties ask the Court to exclude "any . . . reference to, or argument regarding the allegations that Mr. Eisen violated Day or the LLC's rights to [the logo that was the subject of Ms. Day's copyright claim.]" Dkt. No. 121 at 1-2 (citing Fed. R. Evid. 401, 403). The Day parties oppose this motion. They argue that the band's logo is relevant to Mr. Eisen's ouster from the Cosmo Alleycats, including his alleged refusal to cancel a trademark application for the band's name and logo. Dkt. No. 127 at 2. They also contend that Mr. Eisen used the band's name and logo after his ouster without permission, and used the name and logo to divert customers to his own band. *Id* at 3.

The Court agrees with the Day parties. The motion is denied.

### C. Motion in Limine No. 3 – Exhibits Not Disclosed in Discovery

The Eisen parties ask the Court to exclude the Day parties' Exhibits 1333-1337 because the documents were not disclosed during discovery. Dkt. No. 122 at 1. Exhibits 1333-1336 are described as captures of portions of public websites controlled by Mr. Eisen and articles of incorporation for Radio Gatsby LLC, Mr. Eisen's new band. *See* Dkt. No. 128 at 3. The Eisen

5

1  parties are not prejudiced by the Day parties' failure to disclose these materials during discovery.
2  The motion is denied as to these exhibits.

3  Exhibit 1337 is described as "Noam N. Eisen dba The Cosmo Alleycats, a sole
4  proprietorship, business registration documents from the U.S. Virgin Islands Secretary of State."
5  *Id.* However, the Day parties acknowledge that, as yet, no such exhibit exists. *Id.* at 8. The
6  motion is denied without prejudice with respect to this exhibit. The Eisen parties may renew this
7  motion or object to this exhibit if and when the Day parties attempt to offer it in evidence.

**D.  Motion in Limine No. 4 – Robert Bates' Testimony**

9  The Eisen parties ask the Court to limit the testimony of Robert Bates, the Day parties'
10  valuation expert, "to the opinions and matters disclosed" in his reports. Dkt. No. 123 at 1. They
11  do not object to any particular testimony Mr. Bates is expected to offer, but rather concede that the
12  motion is directed to enforcement of the rule preventing experts from testifying beyond the scope
13  of their expert disclosures. Dkt. No. 141. The Day parties respond that Mr. Bates should be
14  allowed to testify (1) regarding his qualifications as an expert, (2) regarding matters discussed at
15  his deposition, (3) and, because Mr. Bates is a rebuttal expert, regarding matters raised by the
16  Eisen parties at trial. Dkt. No. 129 at 2.

17  The motion is denied, as it is not directed to the exclusion of any particular testimony.

18  Rule 26(a)(2)(B) requires expert witnesses to provide "a complete statement of all opinions
19  the witness will express and the basis and reasons for them," "the facts or data considered by the
20  witness in forming them," as well as a discussion of their qualifications. Fed. R. Civ. P.
21  26(a)(2)(B)(i), (ii), and (iv). An expert's deposition testimony is not a substitute for adequate
22  disclosure in the expert's original report. *See Edwards Lifesciences Corp. v. Meril Life Scis. Pvt.*
23  *Ltd.*, No. 19-cv-06593-HSG, 2022 WL 254348, at *7 (N.D. Cal. Jan. 27, 2022); *Asetek Danmark*
24  *A/S v. CMI USA, Inc.*, No. 13-cv-00457-JST, 2014 WL 6997670, at *1 n.1 (N.D. Cal. Dec. 9,
25  2014). An expert is not permitted to testify to matters not disclosed as required by Rule
26  26(a)(2)(B), absent a showing of substantial justification and an absence of prejudice to the
27  opposing party. This rule applies to all testifying experts.

### E. Motion in Limine No. 5 – Conversion of Partnership into LLC

The Eisen parties ask the Court to exclude evidence that the Cosmo Alleycats partnership was converted into an LLC in December of 2020. Dkt. No. 124 at 1. They argue that Ms. Day failed to comply with California law regarding the conversion of partnerships to LLCs when she filed articles of incorporation for the Cosmo Alleycats LLC. *Id.* at 1-2. Because of this, the Eisen parties contend, testimony regarding the conversion would be an improper legal conclusion and/or unqualified expert testimony. *Id.* at 5. They also argue that, because Ms. Day and other witnesses have asserted attorney-client privilege when questioned about the decision to incorporate the LLC, they will be unable to adequately impeach their testimony on this issue. *Id.* at 2. The Day parties oppose this motion, arguing that it seeks a premature ruling on factual and legal issues to be resolved at trial. Dkt. No. 130 at 2-3.

The motion is denied.

The Court agrees with the Day parties. The question of whether the conversion of the Cosmo Alleycats to an LLC was proper under California law depends on other factual and legal questions to be resolved at trial.

With respect to the Eisen parties' concerns about privilege, Ms. Day does not rely on the advice of counsel for any purpose relevant to this action. Thus, Ms. Day properly may invoke the attorney-client privilege with regard to the contents of communications with her counsel, but she may not refuse to testify about her own conduct and actions, nor may she rely on the fact of her consultation with counsel to suggest that her conduct and actions were proper.

## II. DAY MOTIONS IN LIMINE

### A. Motion in Limine No. 1 – David Rouda's Testimony

The Eisen parties indicate that they may call David Rouda as a witness. Dkt. No. 139 at 43. The Day parties ask the Court to preclude Mr. Rouda from (1) testifying about out-of-court statements made to him by Mr. Eisen and (2) offering his opinion about Mr. Eisen and Ms. Day's working relationship and the Cosmo Alleycats' legal structure. Dkt. No. 125 at 3-5. They also argue that Mr. Rouda's testimony raises ethical and other issues as he is an attorney and has provided Mr. Eisen with legal advice in connection with this dispute. *Id.* at 6-7.

7

1  The Eisen parties respond that Mr. Rouda should be permitted to testify about statements made by Ms. Day, which are admissible as opposing party statements. *See* Dkt. No. 132 at 5 (citing Fed. R. Evid. 801(d)(2)). They appear to concede that Mr. Rouda may not testify regarding Mr. Eisen's out of court statements, Mr. Rouda's assessment of Mr. Eisen and Ms. Day's working relationship or the nature and existence of their alleged partnership, or his own personal opinions about those matters. *Id.* The Eisen parties also argue that Mr. Rouda did not represent Mr. Eisen as to any matter within the scope of his anticipated testimony. *Id.* at 2-4.

The motion is granted in part and denied in part.

Assuming a proper foundation, Mr. Rouda may testify about relevant statements by Ms. Day that are within the exception to the hearsay rule. *E.g.* Fed. R. Evid. 801(d)(2)(A). In addition, Mr. Rouda may not testify about any matters as to which he or Mr. Eisen has asserted was protected from discovery because of the attorney-client privilege. The Court will defer ruling on any other objections to Mr. Rouda's testimony until trial; however, if Mr. Rouda's testimony tracks the contents of his August 6, 2023 declaration, the Court anticipates that very little of that testimony will be admissible. *See* Dkt. No. 132, Ex. A.

With respect to the implications of Mr. Rouda's role as Mr. Eisen's attorney, the ethical issues the Day parties raise do not appear to have any bearing on the admissibility of Mr. Rouda's testimony. To the extent that the Day parties' concern is that Mr. Rouda's testimony is likely to be biased in favor of Mr. Eisen, the Court will consider evidence of bias in assessing Mr. Rouda's credibility and the weight that his testimony should be given.

**B.     Motion in Limine No. 2 – Ray Clark's Testimony**

The Day parties ask the Court to exclude the opinions and testimony of Ray Clark, the Eisen parties' valuation expert, because he (1) did not disclose the models and calculations underlying his valuations, (2) relied on the analysis of another colleague at his firm, who was not disclosed as an expert, and (3) was not prepared for his deposition. Dkt. No. 126 at 5-12. They also ask the Court to sanction the Eisen parties' counsel for making improper objections during

8

1 Mr. Clark's deposition. *Id.* at 17.[1] The Eisen parties oppose the motion, arguing that Mr. Clark
2 was not required to produce the materials in question because the Day parties requested them less
3 than 30 days before his deposition. Dkt. No. 131 at 2-3 (citing Fed. R. Civ. P. 34(b)(2)(A)). In
4 any event, they represent that the information in question was produced to the Day parties before
5 March 13, 2024. Dkt. No. 131-1 ¶ 5. The Eisen parties also argue that Mr. Clark was adequately
6 prepared for his deposition, *see* Dkt. No. 131 at 3, 5-8, and contend that their counsel's objections
7 were proper, *see id.* at 8-9.

8 The motion is granted in part and denied in part.

9 Rule 26(a)(2)(B) requires expert witnesses to provide "a complete statement of all opinions
10 the witness will express and the basis and reasons for them" and "the facts or data considered by
11 the witness in forming [the opinions]." Fed. R. Civ. P. 26(a)(2)(B)(i), (ii). The rule is "worded
12 specifically to provide the opposing party with access to all materials reviewed or considered by
13 the expert." *Utne v. Home Depot U.S.A., Inc.*, No. 16-cv-01854-RS (SK), 2022 WL 4139256, at
14 *3 (N.D. Cal. May 9, 2022) (quoting *In re Google Adwords Litig.*, No. 08-cv-03369 JW HRL,
15 2010 WL 5185738, at *3 (N.D. Cal. Dec. 8, 2010)). This is an affirmative disclosure obligation—
16 an adverse party need not serve discovery to obtain the information within the scope of the rule.
17 *See* Fed. R. Civ. P. 26(a)(2)(B).

18 As noted above, a party that fails to provide information required by Rule 26(a)(2)(B) may
19 not use that information at trial, unless the failure was "substantially justified or is harmless." Fed.
20 R. Civ. P. 37(c)(1). Here, the Eisen parties had an affirmative obligation to disclose the datasets,
21 models, and calculations that Mr. Clark considered and relied on in forming his opinions. *See*
22 Fed. R. Civ. P. 26(a)(2)(B). They did not timely disclose this material when they served Mr.
23 Clark's expert report. This failure to disclose was compounded by Mr. Clark's inability to
24 remember and testify in detail about the datasets, models, and calculations that he considered and

---

[1] The Day parties make various arguments challenging the reliability of Mr. Clark's opinions. These arguments either go to the weight of Mr. Clark's testimony or are untimely motions pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993). *See* Dkt. No. 69; *see also* Dkt. No. 94 (denying the parties' requests for leave to file to file additional dispositive or *Daubert* motions).

upon which he relied. Even if, as the Eisen parties suggest, these materials have now been disclosed,[2] the Day parties have no realistic opportunity to review the materials and to take a further deposition of Mr. Clark and his colleague, Mr. Allen, who apparently prepared the model on which Mr. Clark relies. *See, e.g.*, Dkt. No. 126 at ECF 53 (Clark dep. 115:24-116:1).

The Court concludes that the Eisen parties' failure to make the disclosures required by Rule 26(a)(2)(B) was not substantially justified and was not harmless, but was in fact prejudicial to the Day parties' ability to prepare for trial. The materials that were not timely disclosed appear to concern Mr. Clark's analyses of the "Fair Market Value of [Mr. Eisen's] Partnership Interest" and of "[Mr. Eisen's] Unpaid Earnings." *See* Dkt. No. 126 at ECF 96. If that is so, Mr. Clark may not testify to either opinion. If the Eisen parties believe that there any opinions in Mr. Clark's report that do not depend in whole or in part on the datasets, models, and calculations that were not timely disclosed, they shall so advise the Court by specifically identifying the matters as to which they believe Mr. Clark should be permitted to testify. This identification shall be filed with the Court no later than **April 4, 2024**.

The Court denies the Day parties' request for sanctions without prejudice, as that request does not comply with Civil Local Rule 7-8.

**IT IS SO ORDERED.**

Dated: March 21, 2024

VIRGINIA K. DEMARCHI
United States Magistrate Judge

---

[2] At the hearing on this motion, counsel for the Day parties indicated she had not yet received Mr. Clark's materials. Dkt. No. 141.